IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 06-cv-00688-WDM-CBS

HOWARD GOSMAN,

    Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

    Defendant.

## ORDER ON SECOND MOTION FOR SUMMARY JUDGMENT

Miller, J.

This matter is before me on a Defendant's second motion for summary judgment filed May 17, 2007 (Docket No. 67). For the reasons that follow, the motion for summary judgment shall be granted in part and denied in part.

### Background

Plaintiff brings this action as an insured of Defendant's. Plaintiff obtained automobile insurance from Defendant. Plaintiff's policy included both uninsured motorist and underinsured motorist (UIM) coverage. UIM coverage provides damages for bodily injury when the at-fault party in an accident is underinsured. However, under Plaintiff's policy the UIM benefits are not available if the insured "settles with any person or organization who may be liable for the bodily injury" without the prior consent of Defendant.

On November 30, 2001, Plaintiff Howard Gosman (Plaintiff) was involved in an automobile accident with Patricia Perea a/k/a Patricia Romero (Romero). As a result of the accident, Plaintiff suffered injuries causing over $50,000 in damages. Plaintiff alleges that both Plaintiff and Romero were insured by State Farm Automobile Insurance Company (State Farm Automobile or Defendant) at the time of the accident. Defendant contends that Plaintiff was insured by Defendant while Romero was insured by State Farm Fire & Casualty Company (State Farm Fire), a distinct and separate entity from Defendant.[1] Because Romero was at fault for the accident and liable for all of Plaintiff's injuries, Plaintiff engaged in settlement negotiations with Romero's insurer to settle his claim for injuries sustained in the accident. Plaintiff alleges that although Defendant insured both drivers, Defendant represented only Romero in these negotiations. Defendant contends that Romero's insurer was State Farm Fire, a separate entity from Defendant. Neither party presents affidavits or deposition testimony concerning whether they are separate legal entities. On January 14, 2003, Plaintiff agreed to settle his claims with Romero for $12,000 and signed a general release of Romero regarding his bodily injury claims. There is no evidence that State Farm Mutual was involved in or consented to the settlement. Also, Defendant (State Farm Mutual) did not notify Plaintiff of additional benefits he may have been entitled to under his UIM coverage, and Plaintiff did not make a claim for such benefits.

Subsequently, on October 23, 2003, Plaintiff received a form letter from

---

[1] My March 21, 2007 Order on Motion for Summary Judgment assumed that Defendant, State Farm Automobile, insured both the Plaintiff and Romero. The fact that State Farm Fire insured Romero would not change my March 21, 2007 Order.

Defendant regarding UIM benefits. This letter was sent out to all of Defendant's insureds to see if they qualified for additional UIM benefits after a change in the applicable law (*DeHerrera* project). See *DeHerrera v. Sentry Ins. Co.*, 30 P.3d 167, 175–76 (Colo. 2001) (holding, *inter alia*, that a policy denying UIM coverage because the insured was not in a "car" when injured violated public policy and was void); *Jaimes v. State Farm Mut. Auto. Ins. Co.*, 53 P.3d 743, 746–47 (Colo. Ct. App. 2002) (holding that an insured is entitled to UIM benefits under any policy held by the insured regardless of whether the insured was injured in a vehicle covered by a separate policy with lower UIM benefits). The letter stated:

> The Colorado courts recently ruled that when a policyholder has [uninsured or underinsured motorist coverage (U-coverage)] on one or more of his/her motor vehicles, the U-coverage protects the policyholder, his/her spouse, and relatives who live with the policyholder, regardless of what type of motor vehicle (e.g. motorcycle, snowmobile, ATV, etc.), if any, they occupied at the time of the accident. This means that between 01/01/98 and 01/01/02, if you, your spouse, or a relative living with you at the time was injured in an accident involving an uninsured or underinsured motorist, you may be entitled to U-coverage benefits or additional U-coverage benefits.

Plaintiff completed the attached questionnaire[2] by answering three questions and returned it to Defendant. The three questions were:

> (1) Were you, or your spouse, or a relative living in your household at the time, injured in an accident involving any type of motor vehicle between the dates of 01/01/1998 and 01/01/2002?
>
> (2) Was the accident the fault of another person?
>
> (3) Do you, your spouse, or a relative living in your household have damages (expenses for medical care, wages, pain and suffering or other

---

[2] I will refer to Plaintiff's completed questionnaire as the "Questionnaire" in this Order.

> monetary damages) as a result of the injuries you received in the above accident that remain unpaid or unreimbursed?

Plaintiff answered "yes" to each of these questions. The letter stated that if the answer to all three questions was "yes" then the insured "may be entitled to U-coverage benefits or additional U-coverage benefits." It also stated that Defendant would "provide a written response as quickly as possible." Defendant received the Questionnaire back from Plaintiff on November 17, 2003 and confirmed this receipt in a letter date November 19, 2003. The letter also stated that Defendant was "undertaking a review process to evaluate your accident circumstances and determine whether you have applicable uninsured or underinsured motorist coverage (U-coverage)" and that Defendant would contact Plaintiff if it needed additional information to evaluate Plaintiff's UIM coverage.

On December 12, 2003, Kelley Mondragon, Defendant's claim representative, contacted Plaintiff and informed him that he did not qualify for benefits under *DeHerrera* or *Jaimes* case law. Defendant seems to allege that this was strictly limited to any benefits under *DeHerrera* and did not concern any claim by Plaintiff for UIM benefits. Although Plaintiff asserts he was making a UIM claim, he has no memory of the details of this phone call. However, Mondragon's affidavit states that she told Plaintiff "that he did not qualify for UIM benefits because he settled with the tortfeasor for less than her liability limits and appeared to have been fully compensated for his damages." (Mondragon Aff. ¶ 5 (Docket No. 15-9)).

At the time of this phone call (December 12, 2003) and given the fact that

Plaintiff had settled with Romero on January 14, 2003, he could have timely pursued an underinsured motorist claim against Defendant until January 14, 2005, pursuant to the two-year statute of limitations. Colo. Rev. Stat. § 13-80-107.5 (providing for a two-year statute of limitations for UIM claims). However, Plaintiff did not bring suit within that time. Indeed, he did nothing further for over 18 months until June 27, 2005, when he inquired of Defendant about making a UIM claim. Plaintiff was again told that he did not qualify because he had settled with the at-fault party for less than her policy limit.[3] During another phone call on July 8, 2005, Plaintiff was again told he did not qualify for UIM benefits by reason of his settlement which was confirmed by a letter of the same date which also asserted a general legal denial. (*See* Def.'s Ex. L and Pl.'s Ex. 3, respectively.) Then, on July 12, 2005, Defendant added two new reasons to deny Plaintiff's claim: failure to obtain Defendant's consent to the settlement and, finally, the statute of limitations had run on January 14, 2005.

Plaintiff brought this action on November 18, 2005 in District Court for the City and County of Denver alleging bad faith breach of insurance contract. Defendant removed to federal court on April 12, 2006. On August 25, 2006, Defendant moved for summary judgment arguing that the claims were time-barred by the two-year statute of limitations for tort actions. *See* Colo. Rev. Stat. § 13-80-102 (providing for a two-year statute of limitations for tort actions including tortious breach of contract). On March 21, 2007, I granted the motion for summary judgment to the extent that Plaintiff based

---

[3] As more fully discussed below, the parties now agree that this is not a valid reason for denying a UIM claim.

his claims on any separate and distinct tortious acts which antedated November 18, 2003—two years prior to the date Plaintiff filed this suit. Therefore, Plaintiff's claims arising after November 18, 2003 are still pending.

## Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). "When applying this standard, [the court] view[s] the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999) (citing *Byers v. City of Albuquerque*, 150 F.3d 1271, 174 (10th Cir. 1998)).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). Then, "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Id.* (citing *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)). A mere scintilla of evidence, however, is not sufficient to create a genuine issue of material fact and survive summary judgment. *Simms*, 165

F.3d at 1326 (quoting *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997)).

Discussion

In this case, Plaintiff bases his bad faith breach of insurance contract claim on the denial of his UIM benefits. In particular, Plaintiff alleges that Defendant breached the insurance contract in bad faith by denying his claim for UIM benefits,[4] failing to fully investigate Plaintiff's claim for UIM benefits, and failing to act promptly in response to Plaintiff's claim for UIM benefits.

1.  Legal Standard

"Claims for bad faith breach of insurance contract arise in first-party and third-party contexts. First party bad faith cases involve an insurance company refusing to make or delaying payments owed directly to its insured under a first-party policy such as . . . no-fault auto insurance." *Goodson v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 409, 414 (Colo. 2004) (citations omitted). Third-party claims are those alleging that an insurance company acted "unreasonably in investigating, defending, or settling a claim brought by a third person against its insured under a liability policy." *Id.*

Generally, "[a]n insurer's liability for bad faith breach of insurance contract depends on whether its conduct was appropriate under the circumstances." *Id.* at 415.

---

[4] Although my Order dated March 21, 2007 stated that the only remaining claim was the denial of UIM benefits in December 2003, Defendant addressed Plaintiff's UIM claims numerous times. Because these incidents all occurred after November 18, 2003, claims based on them are not barred by the statute of limitations for tort actions including tortious breach of contract. *See* Order dated March 21, 2007 (holding that the two-year statute of limitations in Colo. Rev. Stat. § 13-80-102 barred claims antedating November 18, 2003). Therefore, I address them in this Order on Motion for Summary Judgment.

The standard of care in a third-party claim is mere negligence. *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1274 (Colo. 1985) (citing *Farmer's Group, Inc. v. Trimble*, 691 P.2d 1138, 1142 (Colo. 1984)). However, to prevail in a first-party claim, a plaintiff must show two elements: (1) the insurer acted unreasonably, and (2) the insurer "either knowingly or recklessly disregarded the validity of the insured's claim." *Goodson*, 89 P.3d at 415 (citing *Savio*, 706 P.2d at 1275); *Dale v. Guar. Nat'l Ins. Co.*, 948 P.2d 545, 551 (Colo. 1997); *Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 572 (Colo. Ct. App. 2003) (citing *Dale*, 948 P.2d 545). The burden of proving each element of the claim rests on the insured. *Goodson*, 89 P.3d at 415. Furthermore, "[t]he reasonableness of the insurer's conduct must be determined objectively, based on proof of industry standards." *Id.*

    2. <u>Reasonableness of denials.</u>

Defendant argues that there is no genuine issue of fact whether it acted reasonably in denying Plaintiff's UIM claims. To analyze Defendant's position I must first determine when the claims were made. Plaintiff argues that his response to the 2003 questionnaire was a claim for UIM benefits. The insurance contract between the parties does not define the term "claim" and the parties have not argued its meaning. Legally the term covers a wide variety of actions by the insured: "the word 'claim'" as used in a provision of an insurance policy . . . connotes the following: authoritative or challenging request; demand of right or supposed right; calling on another for something due or supposed to be due; and demand for compensation, benefits or payment." *Couch on Insurance* § 191:10 (3d ed. 2007).

Having reviewed the questionnaire and deposition testimony of the Plaintiff and in light of the broad construction of the term "claim," I conclude there is a genuine issue of fact as to whether Plaintiff asserted a UIM claim by submitting the questionnaire. The letter accompanying the questionnaire stated that the insured "may be entitled to U-coverage benefits or additional U-coverage benefits" without limiting such entitlement to the *DeHerrera* context.  Defendant's letter confirming receipt of the questionnaire stated that Defendant was "undertaking a review process to evaluate [Plaintiff's] accident circumstances and determine whether [Plaintiff has] applicable uninsured or underinsured motorist coverage."  Plaintiff, as previously discussed, believed he was submitting such a claim and State Farm's representative swears that she denied it. I conclude, therefore, that a genuine issue of fact exists whether the questionnaire and Plaintiff's response constituted a claim of UIM benefits.

Turning to the various reasons given by Defendant for denying Plaintiff's claim, I begin with Defendant's repeated justification that Plaintiff settled with Romero for less than Romero's policy limits.  The parties now agree that this was not a valid reason for denying Plaintiff's claims.  See *State Farm Mut. Auto Ins. Co. v. Tye*, 931 P.2d 540, 543 (Colo. Ct. App. 1996) ("[A]n injured person covered by an underinsured motorist policy who settles . . . in good faith with a tortfeasor or liability carrier for less than the tortfeasor's policy limits, and who is eligible for underinsured motorist benefits, is entitled to compensation in an amount not exceeding the difference between the amount paid to the insured by or on behalf of the tortfeasor and the limits of the underinsured motorist coverage"); *Freeman v. State Farm Mut. Auto Ins. Co.*, 946 P.2d

584, 586 (Colo. Crt. App. 1997) ("[I]n Colorado, an insured is entitled to the difference between the amount received in a good faith settlement with the liability insurer and the insured's UIM coverage limits, even if the insured settles for an amount less than the at-fault party's policy limits." (citing *Tye*, 931 P.2d at 543)).

Given Defendant's involvement in the cases establishing that settlement for less than the at-fault party's policy limits is not a valid reason for denying benefits, Defendant must be held aware that this was the law when it denied liability. Further, Defendant amended its own insurance policy to reflect the fact that UIM benefits could not be denied for settling for less than the policy limits.[5] Accordingly, there at least is an issue of fact whether Defendant's denial was unreasonable and done knowingly or in reckless disregard of the validity of Plaintiff's claim.

Next, Defendant argues that, regardless of its unjustified reliance on settlement within policy limits, its ultimate denial of coverage because of Plaintiff's failure to obtain Defendant's consent prior to settling precludes liability. Plaintiff's initial response to this claim is to assert that Defendant did indeed consent by virtue of Plaintiff's allegation that the Defendant is the same as State Farm Fire. However, Defendant has denied that allegation. In the summary judgment context, that denial based on lack of evidence effectively shifts the burden to the non-movant, the Plaintiff, to set forth

---

[5] Plaintiff's insurance contract previously included a clause stating that UIM benefits were not payable until the limits of the at-fault party's liability coverage were paid. This provision was later changed to state that UIM benefits were not payable until the insured either <u>settles</u> with the at-fault party or obtains a judgment. I also note Plaintiff's argument that using an invalid reason for denial of benefits for a long period of time until the insurance company could assert a valid statute of limitations defense may be considered evidence of bad faith.

PDF Final 10

specific facts "that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (D. Colo. 1998) (citing Fed. R. Civ. P. 56(e)). Plaintiff has wholly failed to meet that burden and there is no evidentiary basis upon which a reasonable jury could find consent was given by the Defendant.

Finally, Plaintiff argues that Defendant has either waived or is estopped from asserting the lack of consent defense because Defendant initially denied coverage on other grounds, citing to *U.S. Fid. & Guar. Co. v. Budget-Rent-a-Car Sys., Inc.,* 842 P.2d 208, 210 n.3 (Colo. 1992) ("An insurer should raise (or at least reserve) all defenses within a reasonable time after learning of such defenses, or those defenses may be deemed waived or the insurer may be estopped from raising them."); *Fed. Life Ins. Co. v. Wells*, 56 P.2d 936, 938 (Colo. 1936) ("In basing its denial of liability and its refusal to pay upon that ground only, the defendant waived the right to insist upon all other grounds of objection, including failure to comply with the provisions concerning the time to give notice."); *Colard v. Am. Family Mut. Ins. Co.*, 709 P.2d 11, 15 (Colo. Ct. App. 1985) ("[Defendant] waives its right to assert failure to timely forward suit papers as a defense because it denied liability on the basis of coverage only and did not assert the notice defense until after judgment was entered . . . and this declaratory judgment action was instituted." (citing *Wells*, 56 P.2d at 938)).

In response, Defendant argues that waiver and estoppel are not appropriate because Plaintiff has not shown he was prejudiced, citing *Mgmt. Specialists, Inc. v. Northfield Ins. Co.*, 117 P.3d 32, 37 (Colo. Ct. App. 2004) ("[I]f an insurer, with

knowledge of a ground of forfeiture or noncoverage under the policy, assumes and conducts the defense of an action brought against the insured without disclaiming liability and giving notice of its reservation of rights, it may thereafter be precluded from claiming noncoverage when its conduct has prejudiced the insured.").

This argument fails to acknowledge that waiver and estoppel are distinct concepts. Waiver is the intentional and voluntary abandonment of a known right. *County Comm'rs v. Guar. Ins. Co.*, 90 F.R.D. 405, 408 (D. Colo. 1981); *Gulf Ins. Co. v. State*, 607 P.2d 1016, 1019 (Colo. Ct. App. 1979). No mention is made of an element of prejudice.[6] Estoppel, on the other hand, requires proof by the insured of detrimental reliance or prejudice. *Mgmt. Specialists, Inc.*, 117 P.3d at 38; *Lextron, Inc. v. Trav. Cas. Surety Co.*, 267 F. Supp. 2d 1041, 1048 (D. Colo. 2003).

Focusing first on estoppel, Defendant denies any prejudice has been shown, pointing out that coverage was denied for another reason so that Plaintiff was in the identical position vis-a-vis Defendant's coverage as he would have been had Defendant denied coverage for lack of consent. Plaintiff does not present any focused argument of how he was prejudiced but rather relies on plucking isolated statements out of their context. For example, Plaintiff proposes a black letter rule that "denial of coverage on one ground waives all others" (Pl.'s Resp. at 19) and cites to note 3 of the *Budget Rent-A-Car* case. In fact, note 3 recommends, rather than requires, notice of all defenses be given because they "may" otherwise be waived or estopped. 842 P.2d at

---

[6] The *Wells* case notes the distinction but declined to rule out the possible requirement of detrimental reliance or prejudice as an essential element of waiver. 56 P.2d at 940.

210 n.3.  There may well be estoppel preventing a coverage defense; however, it is not automatic but rather depends on proof.

For estoppel to apply, Plaintiff has the burden of showing detrimental reliance and there is no presumption of prejudice.  *Mgmt. Specialists, Inc.*, 117 P.3d at 38.  Again, in the summary judgment context when Plaintiff is faced with the Defendant's denial, the law imposes the burden on Plaintiff to present admissible evidence indicating a genuine issue of fact concerning prejudice.  Again, Plaintiff has failed to do so.  Given that he did not timely file an action after coverage was denied for the wrong reason, it would be pure speculation to infer that he would have timely filed his lawsuit on or before January 14, 2005 if Defendant had denied his claim because he failed to obtain the Defendant's consent to the Romero settlement.  I can conceive no other distinct prejudice and Plaintiff has submitted none which is supported by Rule 56(e) evidence.  Accordingly, summary judgment on the estoppel issue should be granted. *See Adler*, 144 F.3d at 1471.

Turning to waiver, if indeed prejudice is an essential element then Plaintiff would have failed to meet his burdens for the same reason and summary judgment should be granted.  I conclude, however, that to establish waiver Plaintiff need only prove the knowing and intentional waiver of a known right.  As presented in this case, Defendant did not refer to the consent until long after coverage had been denied for other reasons.  This presents at least circumstantial evidence that Defendant intended to waive any defense it may have had on the consent issue.  Accordingly, a genuine issue of fact remains to be determined by the jury.

In sum, therefore, I conclude that genuine issues of material fact remain pending regarding (1) whether Defendant's denial of coverage for improper reasons during the time Plaintiff could still timely file an action for UIM coverage was unreasonable and done knowingly or in reckless disregard of the validity of Plaintiff's claim and (2) whether Defendant waived its right to deny coverage because of the failure to obtain its consent to the original settlement.

Accordingly, it is ordered:

1. Defendant's second motion for summary judgment (Docket No. 67) is granted in part and denied in part.

2. Plaintiff's claim for bad faith breach of insurance contract remains pending for the denial of benefits prior to January 14, 2005 but remains subject to the possible affirmative defense that Plaintiff did not obtain the Defendant's consent to the Romero settlement unless Plaintiff proves that Defendant waived that defense. Plaintiff's claims for failing to fully investigate his claim for UIM benefits and failing to act promptly in response to his claim also remain pending with respect to any claim for benefits made prior to January 14, 2005.

3. All other claims are dismissed with prejudice.

DATED at Denver, Colorado, on January 25, 2008.

BY THE COURT:

s/ Walker D. Miller
United States District Judge